1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

CYRUS PLUSH,

CASE NO. 3:20-CV-5258-BHS-DWC

11

Petitioner,

REPORT AND RECOMMENDATION

12

v.

Noting Date: August 6, 2021

13

WASHINGTON STATE et al.,

14

Respondents.

15
16        The District Court has referred this action to United States Magistrate Judge David W.

17 Christel. Petitioner initiated his federal habeas Petition on March 16, 2020, pursuant to 28 U.S.C.

18 § 2254, seeking relief from his state court convictions and sentence.[1] *See* Dkt. 1, 32. The Court

19 concludes Petitioner failed to properly exhaust his state court remedies as to all grounds raised in

20 the Petition; however, a state remedy remains available to Petitioner. Therefore, the Court

21
22
23
_____

24        [1] On May 3, 2021, Petitioner filed an Amended Petition, which is the operative petition in this matter. Dkt.
32. The Court will refer to the Amended Petition as the "Petition" throughout the Report and Recommendation.

1  recommends the Petition be dismissed without prejudice. The Court recommends denying all

2  other pending Motions (Dkt. 38, 39) as moot.

3  **I.    Background**

4      A.  Factual Background

5          Petitioner is in custody under a 2018 state court judgment and sentence imposed for his

6  2016 conviction for failure to resigster as a sex offender.[2] Dkt. 20, Exhibit 1. The Washington

7  Court of Appeals summarized the facts underlying Petitioner's 2016 conviction as follows:

8          Plush's 1992 felony sex conviction required him to register as a sex
       offender. RCW 9A.44.130(1)(a).

9
           Plush last registered on January 14, 2016 at an apartment in Aberdeen,
10     Washington. Plush lived there from May to November 2015. The apartment
       manager posted a three-day eviction notice on the apartment door in November
11     2015 because at that point the manager had not seen Plush "in over a month and he
       was late on his rent." Report of Proceedings (RP) (May 5, 2016) at 49. A new tenant
12     began renting the apartment in December 2015.

13         On January 24, 2016, Aberdeen Police Officer Jon Hudson went to Plush's
       registered address to verify Plush's residence. The new tenant confirmed Plush did
14     not live there. On February 3, 2016 Aberdeen Detective Jeffrey Weiss located Plush
       and notified him that he was required to register a change of address within 72
15     hours. Weiss checked and by February 12 Plush had not registered a new address.

16         On February 29 the State charged Plush with one count of failure to register
       as a sex offender between "November 5, 2015, and ending November 12, 2015."
17     Clerk's Papers (CP) at 1. The declaration for an order for a warrant of arrest, filed
       with the information, detailed Plush's recent incarcerations and his residency at the
18     Wishkah address, and stated "On February 9, 2016, ... Weiss ... was advised that
       the Defendant had not made any contact with ... the Grays Harbor County Sheriffs
19     Department" and "[o]n February 12, 2016, Detective Weiss checked the Spillman
       data base and saw the Defendant was still listed at his old registered address." CP
20     at 5.
           Plush filed a motion to dismiss, arguing that he was in custody between
21     November 5 and November 12, 2015 and, therefore, was not required to register.

22  _____

23  [2] Although Petitioner is currently serving a sentence imposed for a later 2019 Cowlitz County conviction for failure
    to register as a sex offender, see Dkt. 20, Exhibit 2, Judgment and Sentence, Cowlitz County Cause No. 19-1-00759-
    8, Petitioner still remains "in custody" under the 2018 sentence because he must serve a term of community custody
24  on the 2018 sentence following his release from prison. See Dkt. 19 at 1.

The State then filed a motion to file an amended information. The trial court denied Plush's motion to dismiss because the State set a motion to amend the information dates to be heard on a specific date. At the hearing, the trial court granted the State's motion to amend the information, because "the dates now referred to in the amended information ... were included in the original affidavit for probable cause." RP (Apr. 25, 2016) at 4. Plush filed a motion to reconsider that the trial court denied. The State's amended information alleged Plush failed to register between January 18 and February 26, 2016.

The matter proceeded to trial. Dennis Lusby, a Grays Harbor County Sheriff's Office corrections lieutenant who is responsible for bookings, testified that Plush was in custody from November 6, 2015 to January 15, 2016 and February 4, 2016 to February 22, 2016 on unrelated charges and from "February 26th, 2016" until the date of trial on the current failure to register charge. RP (May 5, 2016) at 94. [court's footnote 1. Lusby later testified "on 2/25 Plush was taken into custody for new failing to register charges." RP (May 5, 2016) at 96. Since Lusby's earlier testimony regarding "February 26th" is referring to the date on a computer printout of inmate bookings and since Lusby includes the exact time Plush was taken into custody on February 26 ("09:15"), we use February 26, 2016 as the date Plush was re-incarcerated. RP (May 5, 2016) at 94.]

During her closing remarks, the prosecutor stated, "the State's allegation ... is that the defendant failed to register from January 18th until February 26th. Now, the State doesn't need to prove that entire time ... just that he failed to register some period of time in there that was more than three days." RP (May 5, 2016) at 112. [court's footnote 2. Under RCW 9A.44.130(4)(a)(i), offenders have three business day from the time of release from custody to register. We take judicial notice that February 22, 2016 was on a Monday.] The prosecutor continued by arguing there were "two times frames" one of them was "from January 18th, 2016 until February 4th, 2016" and the other was "from February 22nd when he was released ... until February 25th when he was picked up again." RP (May 5, 2016) at 113. There was no objection to these comments.

The jury found Plush guilty. During sentencing, the State offered a statement of Plush's extensive criminal history. Plush did not object. The sentencing court questioned the prosecutor about whether the correct county was listed for one of the prior convictions. The prosecutor stated that the wrong county was listed and stated, "[T]he cause number is correct, it's just the wrong county. I have the Judgment and Sentence with me today." RP (June 3, 2016) at 17.

The sentencing court calculated Plush's offender score at 14 and imposed a standard range sentence. Plush got frustrated because the trial court would not hear his arguments regarding entrapment and false imprisonment. Plush stated, "This is f***ing crazy" and refused to sign the judgment and sentence. RP (June 3, 2016) at 22. . . .

1  Dkt. 20, Exhibit 3 at 1-3.

2

3       B.  Procedural Background

4            1.  RAP 2.3(b) Motion for Discretionary Review

5       Before Petitioner initiated his direct appeal from the judgment and sentence, he first

6  sought *pro se* discretionary review pursuant to Wash. App. R. P. 2.3(b)[3] (hereinafter "RAP 2.3

7  Motion") in the Washington Court of Appeals, raising the following five issues: (1) motion of

8  judge bias; (2) motion to dismiss for having only 10 days to prepare for trial; (3) motion to

9  dismiss for lack of cause to arrest; (4) motion to dismiss for violation of right to speedy trial; and

10  (5) motion to dismiss for ineffective assistance of counsel. Dkt. 20, Exhibit 5, RAP 2.3 Motion;

11  Exhibit 6, Motion for Court to Decide Case Without Response by Respondent Exhibit 7, Answer

12  to RAP 2.3 Motion; Exhibit 8, Reply to Answer. The Washington Court of Appeals denied

13  review. Dkt. 20, Exhibit 9, Ruling Denying Review. Petitioner did not seek review by the

14  Washington Supreme Court, and a certificate of finality issued on June 7, 2017. Dkt. 20, Exhibit

15  10, Certificate of Finality.

16            1.  *Direct Appeal*

17

18

19  _____

20  [3] RAP 2.3(a) provides: "a party may seek discretionary review of any act of the superior court not appealable as matter of right. " Discretionary review may be accepted only in the following circumstances: "(1) The superior court has committed an obvious error which would render further proceedings useless; (2) The superior court has

21  committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act; (3) The superior court has so far departed from the accepted and usual course of

22  judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court; or (4) The superior court has certified, or all the parties to the litigation have

23  stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation." Wash. R. App. P. 2.3(b).

24

Petitioner, through counsel, also filed a direct appeal from the judgment and sentence to the Washington Court of Appeals. Dkt. 20, Exhibit 11, Brief of Appellant; Exhibit 12, Brief of Respondent. Petitioner presented four issues to the Washington Court of Appeals: (1) the superior court erred by allowing the prosecution to amend the information to change the dates of the crime; (2) the amendment prejudiced the defense by placing the defendant in the position of having to choose between the right to a speedy trial and the right to prepare for trial ("Hobson's choice"); (3) the prosecution committed misconduct during closing argument; and (4) the judge erred by relying on unproven criminal history in sentencing Petitioner. Dkt. 20, Exhibit 11, at 1-2. The Washington Court of Appeals affirmed the conviction but reversed and remanded for resentencing due to the criminal history error. Dkt. 20, Exhibit 3.

After the Washington Court of Appeals issued its opinion, Petitioner filed a *pro se* brief, which the state courts treated as a petition for review before the Washington Supreme Court. Dkt. 20, Exhibit 13, Brief of Cyrus Plush; Exhibit 14, Letter from Supreme Court, dated June 18, 2018. Petitioner's *pro se* brief raised eleven issues: (1) Hobson's choice; (2) denial of right to call witnesses; (3) denied right to present evidence; (4) illegally withholding evidence; (5) new or different element of amended charge required dismissal; (6) illegal jury instructions; (7) whether petitioner knowingly failed to register; (8) false arrest warrant; (9) entrapment; (10) speedy trial violation; and (11) vindictive, selective, and malicious prosecution. Dkt. 20, Exhibit 13. The Washington Supreme Court denied review on September 5, 2018. Dkt. 20, Exhibit 15, Order. The state court issued the mandate on September 12, 2018. Dkt. 20, Exhibit 16, Mandate.

In 2018, the superior court resentenced Petitioner on remand. Dkt. 20, Exhibit 1. Petitioner, through counsel, appealed from the new judgment and sentence. Dkt. 20, Exhibit 17, Exhibit 18, Exhibit 19. The Washington Court of Appeals issued an opinion on appeal on

February 2, 2021. Dkt. 35, Exhibit 20. The state court declined to consider Petitioner's claims challenging the underlying conviction but remanded the sentence for the trial judge to strike a provision concerning accrual of interest and to address whether Petitioner should pay a DNA collection fee and supervision fee. Dkt. 35, Exhibit 20; Dkt. 36, Exhibit 21-22.

   2. *Federal Petition*

  On March 16, 2020, Petitioner initiated this case. Dkt.1, 11 (original Petition). Respondent filed his Answer on October 23, 2020. Dkt. 19, 20. After an extension, Petitioner filed his Traverse on December 18, 2020. Dkt. 24. On January 25, 2021, the Court ordered Petitioner to file an amended petition, as it was not clear whether Petitioner intended to raise all twelve grounds for relief identified by Respondent. Dkt. 25. After several extensions, Petitioner filed his Amended Petition on May 3, 2021. Dkt. 32. On May 12, 2021, the Court ordered Respondent to file supplemental briefing addressing the grounds for relief raised in the Amended Petition. Dkt. 33. On June 8, 2021, Respondent filed his Supplemental Answer. Dkt. 34, 35. Petitioner did not file a Supplemental Traverse. *See* Dkt.

  In the Petition, Petitioner challenges the constitutionality of the statute which required him to register as a sex offender. Dkt. 32 at 2. Petitioner alleges there are many "aspects" of why the statute is unconstitutional, which he raises as 12 separate issues:

1. Hobson's choice of choosing one right over another
2. Denied the right to call witnesses
3. Denied the right to present evidence
4. Illegally withholding evidence
5. Unlawful amendment of the charges
6. Illegal jury instructions
7. Petitioner did not "knowingly" fail to register
8. Knowingly filing a false arrest warrant
9. Entrapment
10. Speedy trial violation
11. Vindictive and selective prosecution
12. The failure to register statute is unconstitutional

Dkt. 32, at 8-10, 26-47.

**II.    Evidentiary Hearing**

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct. 1388. The Court finds it is not necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state court record.

**III.    Discussion**

Respondent asserts Petitioner failed to exhaust his state remedies, and thus, his Petition should be dismissed without prejudice. Dkt. 34, 20 (original state court record), 35-36 (supplemental state court record).

A.    Legal Standard

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal

REPORT AND RECOMMENDATION - 7

1   judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state

2   courts one full opportunity to resolve any constitutional issues by invoking one complete round of

3   the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

4          A federal habeas petitioner must provide the state courts with a fair opportunity to correct

5   alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v.*

6   *Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state

7   Supreme Court even though the state court did not reach the argument on the merits). A federal

8   claim is "fairly and fully" presented to the state courts if the claim is presented "(1) to the proper

9   forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for

10  the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations

11  omitted).

12         It is not enough if all the facts necessary to support the federal claim were before the state

13  courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing

14  *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include

15  reference to a specific federal constitutional guarantee, as well as a statement of the facts

16  entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay*,

17  403 F.3d at 668. Petitioner bears the burden of proving he has exhausted available state remedies

18  and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v.*

19  *Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

20     B.  Analysis

21         Petitioner raised his federal claims for the first and only time when he sought discretionary

22  review by the Washington Supreme Court. However, because Petitioner did not fairly present these

23  twelve grounds as federal claims to the Washington Court of Appeals, he did not fairly present or

24  exhaust his federal claims by virtue of raising them for the first and only time before the

Washington Supreme Court. *Casey v. Moore,* 386 F.3d 896, 915-16 (9th Cir. 2004). In order for Petitioner to exhaust a claim, the claim must have been raised throughout the entire state appeals process, not just at the end  before the state's highest court. *See Ortberg v. Moody,* 961 F.2d 135, 137 (9th Cir. 1992) ("The remainder of the petition was properly dismissed because five of the remaining six claims either were not raised on every level of direct review, or were raised for the first time on habeas. As stated above, only claim number twelve ... was raised on every level of direct review.").

　　　　In his direct appeal, Petitioner presented the following four issues to the Washington Court of Appeals:

1. Should the State be allowed to file an amended information the days prior to trial, changing the dates alleged in the charging document on a failure to register case, where the State has been on notice for at least a month that the defendant was  incarcerated and unable to register on the dates originally charged?
2. Is a defendant prejudiced when his entire defense strategy and witnesses revolved around him being incarcerated on the dates he is alleged to have failed to register, when the State is allowed to file an amended information ten days before trial, placing the defendant in a position to choose between his right to a speedy trial or his right to be adequately prepared for trial.
3. Does the State commit flagrant and ill-intentioned misconduct when it argues that a jury can convict the defendant for failing to register after his release from jail and before being arrested when there is no evidence in the record for a jury to find that the defendant was out of custody for more than three business days?
4. Does a trial court error when it relies on the State's representation of the defendant's criminal history and offender score when the State does not present judgments and   sentences or other evidence of the defendant's prior convictions?

Dkt. 20, Exhibit 11 at 1-2.

　　　　While the first two issues raised by Petitioner on direct appeal are similar to Ground One (Hobson's choice) and Ground Five (unlawful amendment of information) that Petitioner now pursues in this Court, he did not present these two issues before the Washington Court of Appeals as federal issues. Rather, Petitioner presented these two issues solely as issues of state law. Dkt. 20, Exhibit 11 at 7-12; *See Casey,* 386 F.3d at 915-16. Furthermore, Petitioner's prosecutorial

1    misconduct claim raised on direct appeal before the Washington Court of Appeals is distinct

2    from the claim he made before the Washington Supreme Court in his petition for review and now

3    makes on habeas review – that the prosecutor engaged in vindictive and malicious prosecution

4    when the arrest warrant and amended information were filed. Dkt. 20, Exhibit 13 at 22-23.

5    "[M]ere similarity between claims is insufficient to exhaust." *Duncan,* 513 U.S. at 366. Raising a

6    claim in state court on one constitutional theory, and then seeking relief in federal court on a

7    different constitutional theory, does not satisfy the exhaustion requirement even when the two

8    claims rest on the same facts. *Tamalini v. Stewart*, 249 F.3d 895 (9th Cir. 2001).

9         In sum, having only presented his current federal claims when seeking review by the

10   Washington Surpeme Court, all twelve claims are unexhausted. Accordingly, Petitioner did not

11   properly exhaust his state court remedies.

12        C.   Available State Remedies

13        Respondent maintains there is a state remedy available and, thus, the Petition should be

14   dismissed without prejudice. Dkt. 34. If there is a state remedy available, Petitioner will need to

15   return to the state level to exhaust his claims. *See Johnson v. Lewis*, 929 F.2d 460, 464 (9th Cir.

16   1991). "The appropriate time to assess whether a prisoner has exhausted his state remedies is

17   when the federal habeas petition is filed, not when it comes on for a hearing in the district court

18   or court of appeals." *Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993).

19        Here, Petitioner has an available state remedy. Washington State imposes a one-year

20   statute of limitations on the filing of a personal restraint petition or other post-conviction

21   challenge. RCW § 10.73.090. Here, the superior court resentenced Petitioner on remand. Dkt. 20,

22   Exhibit 1. Petitioner, through counsel, appealed from the new judgment and sentence. Dkt. 20,

23   Exhibit 17, Exhibit 18, Exhibit 19. The Washington Court of Appeals issued an opinion on

24

1   appeal on February 2, 2021.[4] Dkt. 35, Exhibit 20. Therefore, at the time this Petition was filed,

2   the time to file a collateral attack has not yet run on the new judgment and sentence. *See Brown*,

3   11 F.3d at 915.

4       Petitioner failed to properly exhaust his state remedies and state remedies remain available

5   to him. Accordingly, the undersigned recommends the Petition be dismissed without prejudice.

6   *See Hill v. Hill*, 2001 WL 34727917 (D. Or. June 29, 2001).

7   **IV.    Certificate of Appealability**

8       A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

9   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

10  (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may

11  issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional

12  right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of

13  reason could disagree with the district court's resolution of his constitutional claims or that jurists

14  could conclude the issues presented are adequate to deserve encouragement to proceed further."

15  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

16  (2000)).

17      No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

18  would conclude the issues presented in the Petition should proceed further. Therefore, the Court

19  concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

20

21

22

23      [4] The state court declined to consider Petitioner's claims challenging the underlying conviction but
    remanded the sentence for the trial judge to strike a provision concerning accrual of interest and to address whether
24  Plush should pay a DNA collection fee and supervision fee. Dkt. 35, Exhibit 20.

1    **V.      Motion to Receive Assistant Attorney General's Response ("Motion to Receive**
2          **Electronic Copies," Dkt. 38)**

3          Petitioner asks the Court to send an electronic copy of Respondent's Supplemental

4    Response "in case" he needs to respond to "more lies." Dkt. 38 at 2. However, Petitioner has

5    already filed his Supplemental Traverse, in which he responded to the arguments raised by

6    Respondent in the Supplemental Response. Dkt. 34, 35, 36, 37. There is no indication in the

7    record that Petitioner did not receive an electronic copy of the receive the Supplemental

8    Response.

9          Moreover, Petitioner argues he cannot receive legal mail in prison except through

10   electronic filing. Dkt. 38 at 2.  However, to the contrary, while Petitioner must file pleadings and

11   other documents with the Court through the electronic filing system, the parties may also use paper

12   mail service. In accordance with the electronic filing procedures, Respondent mails copies of the

13   state court record to *pro se* petitioners rather than requiring prison staff to print off the record

14   through the electronic filing system. Dkt. 40 at 1. Respondent served Petitioner with the state

15   court record using postal mail. Dkt. 20, at 3 (Certificate of Service for Exhibits 1-19); Dkt. 35, at

16   2 (Certificate of Service for Exhibit 20); Dkt. 36, at 2 (Certificate of Service for Exhibits 21-22).

17   Petitioner refused to accept the documents mailed to him via postal mail. Dkt. 40, Attachment A,

18   Envelope of Returned Mail (indicating "Refused by Offender"); Attachment B, Envelope of

19   Returned Mail (indicating "Refused by Offender"). Petitioner does not argue he wishes to

20   receive an electronic copy of the state court records filed by Respondent. *See* Dkt. 38.

21         Based on the foregoing, the Court recommends denying the Motion for Electronic Copies

22   as moot. (Dkt. 38).

23

24

**VI.    Motion to Schedule All Noting Dates/Hearings for 7/16/2021 ("Motion to Schedule Hearing Dates," Dkt. 39)**

Petitioner moves for the Court to schedule all noting dates for July 16, 2021. Dkt. 39. Petitioner continues to argue he cannot get legal mail except through electronic filing. Dkt. 39. Petitioner asks the Court to limit the motions that are "completely unnecessary." *Id.*

As noted above, Petitioner rejected his legal mail, which was sent to him pursuant to the Court's electronic filing procedures by Respondent. *See* Dkt. 40. There is no basis for the Court to further continue any adjudication of this matter. Therefore, the Court recommends the Motion to Schedule Hearing Dates (Dkt. 39) be denied.

**VII.    Conclusion**

For the above stated reasons, the Court finds the Petition is unexhausted. As there is an available state remedy, the Court recommends the Petition be dismissed without prejudice. No evidentiary hearing is necessary and a certificate of appealability should be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on August 6, 2021 as noted in the caption.

Dated this 20th day of July, 2021.

David W. Christel
United States Magistrate Judge